No. 3466.—STATE ex rel. LIVINGSTON & GUTHRIE *v.* JAMES GRAHAM, Auditor.

REPORTER.—This case was first decided in favor of the defendant and appellant, and afterward, on rehearing, the first decree was set aside, and the cause was remanded, so that no principle of law was settled by the decision.

APPEAL from the Eighth District Court, parish of Orleans. *Dibble,. J. Billings & Hughes* and *J. B. Howard,* for relators and appellee. *Hornor & Benedict,* for defendant and appellant.

WYLY, J. The defendant appeals from the judgment rendering peremptory the mandamus sued out by the relators, requiring him forthwith to take up the warrants issued by the President of the Board of Public Works in favor of the relators, amounting to $62,643, by issuing therefor his warrants as Auditor upon the general fund of the State for said amount.

The warrants held by the relators, and upon which they demand from the Auditor State warrants for like amount, were issued to them by the President of the Board of Public Works, under a contract made by them with the relators on the tenth December, 1870, for the purpose of removing obstructions and improving the navigation of Bayou Bartholomew, pursuant to act No. 59 of the extra session acts of 1870.

There are several defenses urged, but the most effectual one is, that on the tenth December, 1870, when the contract was made, out of which the relators' claim arose, no agreement could be made by the Board of Public Works, or any one else, to increase the amount of the State debt, because it already exceeded $25,000,000, the limit fixed in the. constitutional amendment then in force.

In reply to this defense the relators say that the constitutional amendment was not in force when the contract was made; that it did not go into operation until five days thereafter, to wit, the fifteenth December, 1870, when it was officially promulgated.

The joint resolution proposing the constitutional amendment was approved sixteenth March, 1870, and it is as follows:

"Be it resolved by the Senate and House of Representatives, in General Assembly convened, two-thirds of the members of each House agreeing thereto, that the following amendment of the Constitution of the State of Louisiana shall be submitted to the people of the State at the next general election for Representatives of the General Assembly, and if approved and ratified by a majority of the voters at said election, the same shall become part of the Constitution:

'Article —. That prior to the first day of January, one thousand eight hundred and ninety, the debt of the State shall not be so increased as to exceed twenty-five million of dollars.'"

We think this amendment of the Constitution became operative from the day it was ratified by the people at the general election which was held on the first Monday of November, 1870. Constitution, article 147. But the relators contend that there is no evidence in the record that the constitutional limitation had been reached when they made the contract of the tenth December, 1870, with the Board of Public Works.

This fact need not be proved. It will be noticed judicially as a historical fact, which came to the knowledge of this court and was announced by it in the case of the State ex rel. Salomon & Simpson v. James Graham, Auditor, 23 An. 402. See authorities collated in Brightly's Federal Digest, page 365, sections 82, 83, 84, 85, 86, 87. As the State debt could not be increased at the time the contract was made, out of which the relators' claim arose, they hold no valid obligations of the State, and in our opinion the Auditor did not err in declining to issue to them the State warrants which they demanded of him.

Let the judgment appealed from be annulled; let the mandamus herein be disallowed, and let the relators' petition be dismissed, with costs of both courts.

Howell, J., *concurring.* I prefer to place my concurrence in the decree of the court in this case, under the facts, on the ground that the relators have not shown a sufficient cause for the issuance of the writ of mandamus.

Act No. 59, approved March 5, 1870, and consisting of six sections, appropriated $40,000, "or so much thereof as may be necessary," out of the internal improvement fund, to remove obstructions in Bayou

Bartholomew ; ordered an examination of the stream, and plans and specifications, with estimates of the cost of the work, to be made by the engineer ; directed the Board of Public Works to advertise for proposals and award the contracts to the lowest bidder, the work to be completed by the first January, 1871, the bids not to exceed the estimates, bonds to be required, and the amounts to be paid by the treasurer out of the internal improvement fund, upon the warrant of the President of the Board of Public Works on the Auditor.

By section 9 of act No. 63, of the extra session of 1870, approved the fourth of April, the internal improvement fund was abolished, and the balance therein transferred to the " interest tax fund."

After this, to wit, on the tenth December, 1870, a contract purports to have been made by the Board of Public Works with the relators, under and by virtue of said act No. 59, for the work at certain prices, by the section, amounting to $118,500 for the four sections, the estimates thereof appearing to be $122,695.

On the twelfth January, 1871, the President of the Board of Public Works drew his thirteen warrants on the Auditor, in favor of the relators, for sums amounting to $63,500, as the cost of the first and second sections. On these the sum of $857 was paid, being all that was to the credit of the internal improvement fund, leaving the amount claimed in this proceeding.

In March, 1871, act No. 45 became a law, amending and re-enacting sections one, three and five, of act No. 59, of 1870, and by which the sum of $40,000 and such additional amount, not to exceed the estimate of the engineer of the Board of Public Works, necessary to complete the removal of the obstructions in Bayou Bartholomew, were appropriated ; proposals to perform said work were to be advertised after receipt of the estimates provided for in section 2, of act No. 59, of. 1870, and contracts awarded to the lowest bidder who would offer the best security to complete the work in a reasonable time, and upon the completion of each section and its acceptance by the engineer, payment was to be made on the warrant of the President of the Board of Public Works upon the Auditor in favor of the contractor, the act closing with this proviso : "that if any warrants have been drawn upon the internal improvement fund by the President of the Board of Public Works anterior to the date of the passage of this act as part payment of the work, the State Auditor of Public Accounts is hereby authorized and it shall be his duty to take up such warrants of the President of the Board of Public Works, and issue therefor his warrants upon the general fund of the State."

It is upon this proviso that the relators rely as imposing upon the Auditor the duty of taking up the warrants issued on twelfth January preceding its passage.

It is contended, and I think very properly, on behalf of the Auditor, that under the terms of the act No. 59, of 1870, no contract could be entered into, binding upon the State, for a sum exceeding $40,000 ; and if it could, the proviso relied on is without effect, because no specific amount is appropriated, as required by article 104 of the Constitution.

If it be true that such an amount of work as represented in the claim, embracing forty-nine miles of the river, and worth $63,500, was really performed by the relators within thirty-two days, they have not presented a case for a mandamus to compel the Auditor to issue any warrants in their behalf on the Treasurer. They have not shown a law which makes it the duty of the Auditor to issue a warrant for the specific warrants held or the sum claimed by them. The amendatory act of 1871 does not refer to their contract, but clearly contemplates the contracting and paying for the whole work, as first provided for in the first act. The proviso is drawn in unusual language for a law— "if any warrants have been drawn, etc," implying a doubt and leaving the whole matter to be determined by the Auditor, as to their existence, dates, amounts and the object of their issuance. Such language does not impose a duty which the Auditor is legally competent to perform.

## On Rehearing.

Howe, J. After further examination of this case a majority of the court are in favor, in the interests of justice, of remanding this cause, for the purpose of taking proof as to the amount of the State debt at the time this contract was made.

It is therefore ordered that the judgment heretofore rendered by us be set aside, that the judgment of the lower court be reversed, and the cause remanded for a new trial at costs of appellees.

Howell, J., *dissenting*. I adhere to the opinion already filed by me herein, and I therefore dissent from the decree now rendered.

Wyly, J., *dissenting*. I do adhere to the former decree rendered in this case.

The main ground set up in the petition and brief for rehearing was that the contract was made long prior to the tenth December, 1870, and the relators pressed the court to remand the case, in order to give them the opportunity to prove it.

I objected to granting the rehearing, and I now object to remanding the case, because the relators are precluded by their judicial admissions from showing that they made the contract prior to the tenth of De-

cember, 1870. In their petition we find the ·following allegation, which no court can ever permit the relators to contradict, to wit : " Petitioners aver that under and according to the provisions of said above recited act they contracted with the Board of Public Works, which contract was entered into between these petitioners and the Board of Public Works of the State of Louisiana, on the tenth day of December, A. D. 1870, a duly certified copy of which contract is attached, etc."

On the tenth December, 1870, the constitutional amendment limiting the State debt to twenty-five millions of dollars was in force. As a matter of history the court took notice that the State debt at that date largely exceeded twenty-five millions of dollars.

I do not believe the relators ever made a valid contract for the work; not a single requirement for letting out and making the contract according to act 59, of the acts of 1870, seems to have been complied with.

From the short time between the making of the contract and the reception of the work by the State Engineer—only about thirty days— I do not believe that sixty odd thousand dollars of work was done to improve the navigation of Bayou Bartholomew. I regard the case as having no merit whatever, and I will add, I believe the whole claim is a fixed up job to defraud the State out of a large sum of money. Act No. 59, to improve the navigation of Bayou Bartholomew, never authorized a contract to exceed forty thousand dollars. I regard the contract for one hundred and eighteen thousand dollars for that work as a deliberate fraud upon the State.

I therefore object to remanding this case, and I respectfully dissent from the judgment to that effect.